CITY OF ENGLEWOOD AND M. LESLIE DENNING, PLAIN-
TIFFS-RESPONDENTS AND CROSS-APPELLANTS, v.
ALLISON LAND COMPANY, *ET AL.*, DEFENDANTS-AP-
PELLANTS AND CROSS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued June 10, 1957—Decided July 1, 1957.

Before Judges CLAPP, FRANCIS and STANTON.

*Mr. LeRoy B. Huckin* argued the cause for plaintiff-respondent and cross-appellant City of Englewood.

*Mr. Seymour A. Smith* argued the cause for plaintiff-respondent and cross-appellant M. Leslie Denning.

*Mr. Walter D. Van Riper* argued the cause for defendants-appellants and cross-respondents Allison Land Company and the trustees (*Messrs. Van Riper & Belmont,* attorneys; *Mr. Paul N. Belmont,* of counsel).

*Mr. Milton Rosenkranz* argued the cause for defendant-appellant and cross-respondent Allan Kriegel.

The opinion of the court was delivered by

CLAPP, S. J. A. D. The judgment of the Superior Court, Chancery Division, is affirmed for the reasons expressed in the opinion of Judge Grimshaw reported in 40 *N. J. Super.* 495 (*Ch. Div.* 1956), see further 25 *N. J. Super.* 466 (*Ch. Div.* 1953), and for the additional reasons herein stated.

The first question here, one that was not presented below, is whether the conveyance proposed to be made by the defendant Allison Land Company to the defendant Allan Kriegel meets the condition stated in paragraph 2 of the decree of May 26, 1944 (see Judge Grimshaw's earlier opinion, 25 *N. J. Super.,* at *page* 470).

The decree was entered upon a petition of the surviving trustee appointed by the will of William O. Allison. As stated in the petition, the trustee was concerned over the fact that the will apparently gave him no power to dispose of real estate standing in the name of the Allison Land Company, which held title to all land the testator had purchased in this state (including the land to be conveyed to Kriegel). The petition continues:

"Under the law there seems to be no question as to the power of the trustees and your petitioner as surviving trustee to manage and dispose of personal property in any way necessary or convenient to efficiently carry out the terms of the trust, but the question arises as to the validity of any title to real estate standing in the name of the trustees where it becomes necessary to dispose of such real estate and to transfer legal title in order to carry out the terms

of the trust. Your petitioner further shows that notwithstanding the omission of powers delegated to the trustees in the Last Will and Testament of William O. Allison, deceased, it is necessary for the proper and efficient management of the trust that it be declared by this Court that the surviving trustee has full power and authority to convey and dispose of personal property and real estate wherever it may become necessary for the best interests and the efficient management of the trust."

Upon that petition, the court entered a decree, providing in paragraph 2:

"That the petitioner as surviving trustee under the Last Will and Testament of William O. Allison has the right and authority to transfer and convey lands of Allison Land Company and lands in the name of the estate of William O. Allison or in the trustees or trustee thereof *if found essential to carry out the terms of the trust* * * *." (Italics added)

Paragraph 3 of the decree (quoted by Judge Grimshaw, 25 *N. J. Super.*, at *page* 470) declared, further, that the trustees or trustee are empowered to sell and dispose of lands, including not only those "in the name of Allison Land Company * * * the estate of William O. Allison or trustees or trustee," but also those in the name of William O. Allison. In contrast, it will be observed, the real estate in Allison's name (consisting, perhaps, as indicated in the petition, of a "small number of tracts of land" outside the State) is not dealt with by paragraph 2 of the decree. In any event, it would seem that the italicized clause in paragraph 2 of the decree modifies the general power of sale provided in paragraph 3 with respect to the realty of the Allison Land Company.

The theory underlying the clause we have italicized appears to be this: since no express power to dispose of the company's realty was given by the will, the power cannot arise by implication, unless the disposition is necessary for the effectuation of the trust. The leading case is *Chandler v. Thompson*, 62 *N. J. Eq.* 723 (*E. & A.* 1901). See further, for example, *Girard Trust Co. v. Cheeseman*, 93 *N. J. Eq.* 266, 268 (*Ch.* 1921); *Palisades Trust & Guaranty Co. v. Probst*, 128 *N. J. Eq.* 332, 335 (*Ch.* 1940), dealing with a trust created by the testator William O. Allison during

his lifetime, and involving not only counsel who submitted the foregoing decree, but the vice-chancellor who signed it. Whether or not the decree be sound in this respect, is not and cannot be questioned now.

The question here is whether the sale of the tract is "essential," or necessary, to carry out the object of the trust. There is no doubt but that the estate has ample resources to preserve the tract, at least if the trustees adopt the suggestions made by plaintiffs' witnesses for certain minor improvements in the tract. But a doubt does arise as to what constitutes the object of the trust. It is declared in paragraph 1 of the above-mentioned decree (25 *N. J. Super.*, at *page* 470) that "the function of the trust" is to "maintain and preserve the integral beauty of the Palisades in Englewood Cliffs * * * and vicinity." Integral beauty may perhaps mean unimpaired natural beauty. But what is meant by "Palisades"? If the testator had reference to the escarpment along the Hudson River, then the purposes of the trust seem to have been long since performed through other agencies, and we are confronted with a question of *cy pres.* Since the point is not sharply presented, we do not decide the import of the term "Palisades," but we may say, so far as the proofs here go, that the tract in question, which is contiguous to Englewood Cliffs, and which, incidentally, was assembled by the testator, constitutes a part of the Palisades. According to three of plaintiffs' witnesses, it is regarded as such, at least locally; indeed, as stated in the aforementioned petition, the testator's original trustees had intended to maintain this and contiguous lands in pursuance of their duty with respect to the Palisades.

We return, then, to the above question, is the sale of this tract necessary, under existing circumstances, for the effectuation of the purposes of the trust? Clearly it is not. The judgment below, enjoining the sale, can therefore be affirmed, first, on the ground that the condition stated in the decree has not been met.

But, secondly, aside from this condition, we agree with Judge Grimshaw that the injunction was warranted. Appel-

lants, citing *Noice v. Schnell,* 101 *N. J. Eq.* 252, 272 (*E. & A.* 1927), claim that the proposed sale lies within the trustees' discretion and therefore beyond the reach of the court.

Discretions reposed in a trustee are of two main classes: those which demand of him merely that his act and motive be honest, in furtherance of the trust and not capricious; and those, denoted reasonable discretions, which require not only this, but also the soundness of judgment exercised by a man of ordinary prudence. The strong tendency of the law is to construe every discretion so as to bring it within the second class, unless the construction is clearly unwarranted. Here we are entirely satisfied that the discretion confided in the trustees by paragraph 3 of the decree with respect to the sale of the real estate of the Allison Land Company, is of this class. In the case of a reasonable discretion, the great injunctive arm of the court will be lent to a party where any act proposed by the trustees in the exercise of their discretion would amount to a clear departure from sound judgment. *Cf. Scott, Trusts* (*2d ed.* 1956), 1374–1395, 2742. For the authorities, see 6 *N. J. Pract.* 584–587 (1950).

We are therefore asked in this case to determine whether the trustees exercised sound judgment in compliance with the foregoing standard, when they agreed to sell the tract to Kriegel. Their intent was apparently to use the proceeds for the purchase of a number of comparatively small, so-called "manicured" recreational or picnic parks along the highways. It may be urged that small parks of this nature will preserve the natural beauty to some degree (but does this constitute integral beauty?) for the benefit of mankind, and therefore that in connection with such a sale and purchase we are dealing with a discretionary matter. Assuming that to be so, nevertheless we are of the view that this is a case for judicial interdiction of the sale.

The determinative factor is the testimony, noted by Judge Grimshaw (40 *N. J. Super.,* at *page* 499), that the property is "the only place in the area where the flora and fauna indigenous to the Palisades may still be found."

Of course the trustees in all good faith are undoubtedly intent on benefiting more people than would perhaps avail themselves of the plan suggested by plaintiffs' witnesses. However, as to that it might be said, first, that even though the tract, if turned into a natural park, is not likely to be frequented by hordes, nevertheless, through one road, it is made accessible to Route 4, 1,300 feet distant, which is serviced with busses. Furthermore one of plaintiffs' witnesses testified as to an allegedly comparable tract near Los Angeles, which was visited by 30,000 school children in one year. In any event, we feel that though a tract preserved by the Allison trust must provide some sort of benefit to a substantial portion of the community, nevertheless the fact that an enormous number of people fail to use it is a secondary matter.

The primary "function of the trust," as declared in paragraph 1 of the above-mentioned decree, is the preservation of the "integral beauty" of a certain locality. The preservation of this virgin tract appears to be so eminently appropriate, so much in keeping with the trust's primary objective, that we cannot but conclude that the sale of this property for building lots and for the purpose of acquiring, instead, the "manicured" parks constitutes a clear departure from sound judgment.

An attempt is made to impugn the decision below upon the ground that the Chancery Division in 1953, with the consent of the Attorney-General (who opposes the present sale), authorized the trustees to sell a contiguous tract of 80 acres in Englewood Cliffs for purposes of private development. That sale we need not deal with; the mere fact that the trial court might not have sustained it in the light of the present record does not impeach the present decision.

We have already hinted at a third ground which has not been adverted to by counsel and on which the judgment below might perhaps be rested. But we need not pass upon it. If by the "Palisades" the testator had reference to the escarpment in its integral state, which Judge

Grimshaw states (40 *N. J. Super.*, at *page* 498) was in danger of destruction as a result of quarrying operations at the time of the testator's death, then the sale of the tract in question would involve an application of the trust fund *cy pres*. In a proceeding *cy pres,* the court might well take the view that the trust should retain this tract as a natural park, rather than sell it and apply its proceeds to some other purpose. At all events, the court in a proceeding *cy pres* is not controlled by the sound judgment of the trustees, but by its own judgment as to what is fitting. *Cf. MacKenzie v. Trustees of Presbytery of Jersey City,* 67 *N. J. Eq.* 652, 671 (*E. & A.* 1905); *Lakalong Lodge No. 114, of Quakertown, etc. v. Board of Education of Franklin Tp.,* 84 *N. J. Eq.* 112, 116 (*Ch.* 1915); *Mirinda v. King,* 11 *N. J. Super.* 165, 176, 177 (*App. Div.* 1951); 4 *Scott, supra,* 2827, 2828.

We affirm the decision below, then, for the reasons that a sale of the tract is, first, not essential to the trust, and, second (having regard for the primary purpose of the trust), clearly not sound judgment, and for the further reason that it may perhaps involve the courts in an appropriation of the fund *cy pres,* when the courts would have felt that to retain the tract would have been a closer approximation to the testator's wishes.

██ On the cross-appeal, the plaintiff Denning attacked the judgment below because it enjoined the sale "unless authorized by order of this Court," and also because it reserved to the trustees of this perpetual trust the right to make a further application if changed conditions warranted it. We read these provisions as adding nothing to that which is ordinarily implied in every injunctive order. *Johnson & Johnson v. Weissbard,* 11 *N. J.* 552, 555 (1953). There is no substantial injustice here.

██ Cross-appellants also claim they are entitled to counsel fees. We are of the opinion that under the circumstances and in view of the fact that the court is now passing upon the proper administration of a trust fund under its control, there is a fund in court within the purview of *R. R.*

4:55–7(*b*). *Cf. Katz v. Farber*, 4 *N. J.* 333, 344 (1950). But we think that as a matter of discretion Judge Grimshaw properly denied attorneys' fees to cross-appellants. As a general rule, the attorney for a public body, such as the City of Englewood, should receive his compensation solely from that body; neither he nor his client should be permitted to secure additional compensation out of a trust fund by reason of services rendered in the public interest. Furthermore, we do not think it good practice to allow a fee to the attorney for the plaintiff Denning, a citizen and taxpayer of Englewood, despite the fact that the proofs produced below apparently by him and the briefs presented here (and the same should be said of the briefs of all counsel) have been very helpful. Denning appeared voluntarily for the public, in a case where the public was adequately represented by the city counsel and the Attorney-General. *Cf. In re Katz' Estate*, 40 *N. J. Super.* 103, 110 (*Ch. Div.* 1956). The view we take as to these applications is, we think, called for by our present practice which, as a matter of policy, lays down heavy restrictions upon the allowances of counsel fees by the courts. *State v. Otis Elevator Co.*, 12 *N. J.* 1, 27 (1953).